UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ISIAH MEADE,

                        Petitioner,                Case Number: 13-CV-13903
                                                  HONORABLE AVERN COHN

v.

WILLIE SMITH,

                        Respondent.

_____/

## MEMORANDUM AND ORDER
## DENYING PETITION FOR WRIT OF HABEAS CORPUS
## AND
## DENYING A CERTIFICATE OF APPEALABILITY
## AND
## DENYING PETITIONER'S PENDING MOTIONS

### I.  Introduction

This is a habeas case under 28 U.S.C. § 2254.  Petitioner Isiah Meade

(Petitioner) is a state inmate at the Carson City Correctional Facility in Carson City,

Michigan.  Petitioner filed a pro se petition for a writ of habeas corpus challenging his

convictions, following a bench trial, for eight counts of first-degree criminal sexual

conduct, and three counts of third-degree criminal sexual conduct.  Respondent,

through the Attorney General's office, filed a response, arguing that Petitioner's claims

are procedurally defaulted and/or without merit.  For the reasons which follow, the

petition will be denied and a certificate of appealability will be denied.  Petitioner's

pending motions, for the appointment of counsel, to expand the record, for an

evidentiary hearing, and for accommodations in court filings, will also be denied.

## II. Background

## A. Facts

Petitioner's convictions arise from the sexual assault of his daughters, M.M. and T.M. Petitioner suffers from retinoblastoma[1] and is blind. The girls' mother, Kimberly Bowe, has been blind from birth. M.M. and T.M. also both suffered from retinoblastoma. T.M. was blind in both eyes; M.M. is blind in one eye. Shortly after the preliminary examination on November 9, 2007, T.M. died as a result of complications related to the retinoblastoma. Her preliminary examination testimony was admitted at the trial.

M.M. testified that Petitioner sexually assaulted her from approximately 1997 through 2003. When she was eight-years old, her father began teaching her and her sister about sex. He told them that it is a father's job to take his daughters' virginity to prepare them for the future. Petitioner began touching her vagina and her breasts. He performed oral sex on her the first time when she was eight. When she was nine- or ten-years old he taught her how to touch his penis with her hands. In 2001, Petitioner taught M.M. how to perform oral sex on him. She testified that she performed fellatio on him more than ten times. M.M. testified that Petitioner had vaginal intercourse with her for the first time when she was twelve-years old. The petitioner had intercourse with her more than ten times. In July 2003, while visiting her father at his home, she and Petitioner fought because M.M. refused to have intercourse with him. M.M. told Petitioner that none of her friends had the kind of relationship with their fathers that she

---

[1]Retinoblastoma is a rare, rapidly developing cancer that develops from the immature cells of a retina, the light-detecting tissue of the eye. It often results in blindness of the affected eye. See http://en.wikipedia.org/wiki/Retinoblastoma (Last visited Mar. 18, 2015).

had with him.  Petitioner punched M.M. in the face, giving her a bloody nose.  M.M. ran across the street and called police.

The police interviewed M.M. in 2001, in response to T.M.'s report to her mother than the petitioner had been sexually assaulting the two girls.  At the time, M.M. denied that the petitioner was assaulting her.  During trial, M.M. explained that she denied the assaults at the time because she was only twelve-years old and believed she would still have to regularly visit petitioner.

Kimberly Bowe testified that neither of her daughters had regular visitations with their father for the first several years of their lives.  T.M.'s visitations began when she was about six years old, and M.M.'s when she was about five years old.  She first became aware of allegations of sexual abuse in December 2001, when T.M. told her that Petitioner had been fondling her breasts and her private parts and that she heard sounds coming from a room with her father and sister which were not appropriate.  In response, Bowe contacted police.  The police arranged for physical examinations of the girls.  It was determined that M.M.'s hymen was absent and T.M.'s was intact. Following the December 2001, investigation, M.M. continued to have court-ordered visits with her father because she had denied any abuse.  T.M. did not see her father again until November 2003.  At that time, T.M. began having weekend visitations with Petitioner again.

In May 2004, Bowe received a phone call from M.M., telling her that her father had thrown her out of the house because she would not have intercourse with him. M.M. told her mother that she was about eleven years old when her father began abusing her.  According to Bowe, this was the first time M.M. told her mother about

3

sexual abuse.

In May 2005, M.M. and T.M. were removed from Bowe's home.  According to Bowe's testimony, the girls were removed because Bowe had spanked T.M. with a belt. Both girls were placed in foster case.

In late 2005, T.M.'s retinoblastoma returned and it was discovered that she had a brain tumor.  At the time, Bowe was working through a court monitored reunification plan toward having T.M. and M.M. return to her home to live with her.  The court had ordered Petitioner not to have any contact with his daughters, including phone contact. He was, however, having unsupervised phone calls with T.M.  T.M.'s foster case worker, Katina Jones, testified that the phone calls between T.M. and Meade were sexual in nature and T.M. had been caught masturbating during one of these phone calls.  Nevertheless, Petitioner was permitted to have supervised visits with T.M. beginning in August 2006, progressing to unsupervised visits commencing in August 2007.  The unsupervised visits were supposed to occur in a community setting, i.e., not in Petitioner's home.

T.M. testified at the preliminary examination that, in August 2007, during their first unsupervised visit, Petitioner took her to a Big Boy restaurant.  He then took her to his home.  The two listened to music in the living room for a while.  Petitioner then told her to go into the bedroom.  He asked her if he could touch her.  She declined, but he touched her private parts anyway.  T.M. tried to resist and Petitioner became aggressive, hitting an punching her.  Petitioner then raped her.  T.M. showered. Petitioner then performed oral sex on her.  T.M. also testified that her father first started touching her in 2001, when she was eleven years old.  He first had vaginal intercourse

4

with her when she was thirteen years old.  He also performed oral sex on her.

Sharon Adams testified that she is employed as a children's protective services specialist for the Michigan Department of Human Services.  She was assigned to investigate allegations that Petitioner raped T.M. in August 2007.  After interviewing several relevant witnesses, including T.M., Petitioner, M.M., Bowe, and T.M.'s foster care worker, Adams concluded that a preponderance of evidence existed to support the allegations of sexual abuse against T.M.  In preparing a report, Adams reviewed prior records.  She found an allegation of abuse or neglect had been made against Petitioner in 1996 and that the allegation had been denied by the agency.  There was an allegation of physical and mental abuse to T.M. and M.M. by Petitioner in 2001.  After an investigation, those allegations were denied.  Three referrals were made in December 2001, alleging that Petitioner sexually abused T.M. and M.M.  All three were rejected or denied by child protective services.

Petitioner testified in his own defense.  He denied all allegations of sexual abuse.

### B.  Procedural History

Following a bench trial in Wayne County Circuit Court, Petitioner was convicted of eight counts of first-degree criminal sexual conduct (six for the assaults against M.M., and two for the assaults against T.M.), and three counts of third-degree criminal sexual conduct (for assaults against T.M.).  On May 9, 2008, he was sentenced to 18 to 40 years' imprisonment for each first-degree criminal sexual conduct conviction, and 10 to 15 years' imprisonment for each third-degree criminal sexual conduct conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals.  He raised these claims through counsel: (i) insufficient evidence presented to overcome the

5

presumption of innocence; (ii) hearsay statements improperly admitted; (iii) trial court violated due process by not allowing defense to question prosecution witnesses regarding bias and credibility; (iv) ineffective assistance of trial counsel; and (v) case should be remanded for amendment of judgment of sentence.  He raised these additional claims in a pro per supplemental brief: (i) due process requires vacating the trial court's assessment for attorney fees; and (ii) trial counsel was ineffective in failing to object to the restitution and attorney fees.  The Michigan Court of Appeals affirmed Petitioner's convictions.  People v. Meade, Nos. 285956, 285957, 2009 WL 4981196 (Mich. Ct. App. Dec. 22, 2009).

Petitioner field an application for leave to appeal in the Michigan Supreme Court, raising the same claims raised in the Michigan Court of Appeals.  The Michigan Supreme Court denied leave to appeal.  People v. Meade, 486 Mich. 929 (Mich. May 25, 2010).

Petitioner then filed a motion for relief from judgment in the trial court, presenting these claims: (i) appellate counsel's ineffectiveness established cause for failing to raise claims on direct review; (ii) trial court failed to provide any assistive devices to allow Petitioner to assist in his own defense; (iii) trial counsel was ineffective in failing to properly confront and cross-examine witnesses; and (iv) trial counsel was ineffective in failing to: communicate with Petitioner; provide assistive devices; investigate; cross-examine witnesses; and preserve issues for appeal.  The trial court denied the motion. 3/16/11 Opinion & Order, People v. Meade, Nos. 07-021541 & 07-021542 (Wayne County Cir. Ct.).  The Michigan Court of Appeals denied Petitioner's application for leave to appeal the trial court's decisions, People v. Meade, No. 309105 (Mich. Ct. App.

June 25, 2013); as did the Michigan Supreme Court.  People v. Meade, 832 N.W.2d

216 (Mich. June 25, 2013).

Petitioner then filed the pending habeas corpus petition.  He raises these claims:

I.     The competent evidence was not sufficient to overcome the presumption of innocence.

II.    The trial court violated Petitioner's due process rights by improperly admitting hearsay statements which did not qualify as excited utterances.

III.   The trial court denied Petitioner his right to due process and a fair trial by not allowing the defense attorney to question prosecution witnesses regarding bias and credibility.

IV.    Trial counsel was constitutionally ineffective for failing to interview, notice and present exculpatory witnesses, and failing to object to hearsay testimony.

V.     Ineffective assistance of appellate counsel establishes cause for failing to raise issues in a prior appeal.

VI.    Petitioner was denied a fair trial where the court failed to provide assistive devices which would have enabled Petitioner to assist in his own defense.

VII.   Petitioner was denied effective assistance of counsel where counsel failed to (a) properly confront witnesses, (b) properly cross-examine witnesses, (c) communicate with him, (d) provide assistive devices, (e) properly investigate, (f) properly preserve issues on appeal.  Appellate counsel also failed to communicate.

## III.  Standard

Petitioner's claims are reviewed against the standards established by the

Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat.

1214 (AEDPA).  The AEDPA provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

7

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).  "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." Wiggins v. Smith, 539 U.S. 510, 520 (2003) (quoting Williams, 529 U.S. at 413).  However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'" Wiggins, 539 U.S. at 520-21 (citations omitted); see also Williams, 529 U.S. at 409.  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011), quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme

malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 102-03 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. See Williams, 529 U.S. at 412. Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002). "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." Stewart v. Erwin, 503 F.3d 488, 493 (6th Cir. 2007) (citing Williams v. Bowersox, 340 F.3d 667, 671 (8th Cir. 2003); Dickens v. Jones, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002)).

Lastly, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. Warren v. Smith, 161 F.3d 358, 360-61 (6th Cir. 1998).

## IV. Discussion

9

### A.  Sufficiency of the Evidence

In his first habeas claim, Petitioner argues that the Michigan Court of Appeals'
decision denying his claim that insufficient evidence was presented to establish his guilt
was an unreasonable application of Jackson v. Virginia, 443 U.S. 307, 319 (1979).

"[T]he Due Process Clause protects the accused against conviction except upon
proof beyond a reasonable doubt of every fact necessary to constitute the crime with
which he is charged." In re Winship, 397 U.S. 358, 364 (1970).  On direct review, review
of a sufficiency of the evidence challenge must focus on whether "after viewing the
evidence in the light most favorable to the prosecution, any rational trier of fact could
have found the essential elements of the crime beyond a reasonable doubt."  Jackson,
443 U.S. at 319 (emphasis in original).  In the habeas context, "[t]he Jackson standard
must be applied 'with explicit reference to the substantive elements of the criminal
offense as defined by state law.'"  Brown v. Palmer, 441 F.3d 347, 351 (6th Cir. 2006)
(quoting Jackson, 443 U.S. at 324 n.16).

"Two layers of deference apply to habeas claims challenging evidentiary
sufficiency."  McGuire v. Ohio, 619 F.3d 623, 631 (6th Cir. 2010) (citing Brown v.
Konteh, 567 F.3d 191, 204-05 (6th Cir. 2009)).  First, the Court "must determine
whether, viewing the trial testimony and exhibits in the light most favorable to the
prosecution, any rational trier of fact could have found the essential elements of the
crime beyond a reasonable doubt."  Brown, 567 F.3d at 205 (citing Jackson, 443 U.S. at
319)).  Second, if the Court were "to conclude that a rational trier of fact could not have
found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must
still defer to the state appellate court's sufficiency determination as long as it is not

10

unreasonable." <u>Id.</u>

The elements of first-degree criminal sexual conduct charged under Mich. Comp.

Laws § 750.520b(1)(b) are: (1) defendant engages in sexual penetration with another

person; (2) who is at least 13 but less than 16 years of age; and (3) defendant is related

to the victim by blood or affinity to the fourth degree.  <u>Mead</u>, 2009 WL 4981196, at *1.

The elements of third-degree criminal sexual conduct, under Mich. Comp. Laws §

750.520d(1), are: (1) sexual penetration; (2) with a person related to defendant by blood

or affinity to the third degree.

The Michigan Court of Appeals held that sufficient evidence was presented to

sustain Petitioner's convictions as to both victims.  The Michigan Court of Appeals

reasoned, in relevant part:

> At trial, M.M. testified that defendant was her father, and that he engaged
> in several sexual penetrations with her while she was 14 years old or
> younger.  She testified that defendant engaged in five specific sexual
> penetrations with her while she was less than 13 years of age; thus,
> defendant could have been convicted of five counts of CSC 1 pursuant to
> M.C.L. 750.520b(1)(a) (sexual penetration with a victim less than 13 years
> of age).  She also testified that defendant engaged in four specific sexual
> penetrations with her when she was 13 or 14 years of age; thus,
> defendant could have been convicted of four counts of CSC 1 pursuant to
> M.C.L. 750.520b(1)(b)(ii).  The trier of fact may convict based on the
> credibility of the victim's testimony without further corroboration. <u>See
> People v. Jones</u>, 193 Mich. App 551, 554; 484 N.W.2d 688 (1992), rev'd
> on other grounds 443 Mich. 88 (1993).  Viewing the evidence in a light
> most favorable to the prosecution, we conclude that the trial court found
> that the essential elements of six counts of CSC 1 with respect to M.M.
> were proven beyond a reasonable doubt.  <u>Wilkens, supra</u> at 738.
>
> T.M. died before the instant trial commenced, and the trial court admitted
> her testimony from the preliminary examination.  Such testimony was
> admissible under M.R.E. 804(a)(4) and (b)(1) (declarant unavailable due
> to death, and declarant previously testified subject to cross-examination).
> At the preliminary examination, T.M. testified that defendant engaged in
> sexual intercourse with her and performed oral sex on her when she was

13 years old.  T.M. also testified that on August 17, 2007, defendant
engaged in sexual intercourse with her and performed oral sex on her, as
well as touched inside her vagina.  T.M.'s statements to other individuals
following that incident were admitted as an exception to the rule against
hearsay as excited utterances. M.R.E. 803(2).  Those statements
corroborated her testimony.  Further, the trial court found that the incident
report, witness statement, and medical records following that incident all
corroborated her testimony.  Viewing the evidence in a light most
favorable to the prosecution, we conclude that the trial court properly
found that the essential elements of two counts of CSC 1, M.C.L.
750.520b(1)(b)(ii), and three counts of CSC 3, M.C.L. 750.520d(1)(d), with
respect to T.M. were proven beyond a reasonable doubt. Id.

Mead, 2009 WL 4981196 at *1.

Petitioner's argument challenging the Michigan Court of Appeals' decision rests

upon attacks on the credibility of both victims.  He points to alleged inconsistencies in

their testimony and their generally irascible behavior with foster care placements.  But,

on habeas review, a federal court "does not reweigh the evidence or redetermine the

credibility of the witnesses whose demeanor has been observed by the trial court."

Matthews v. Abramajtys, 319 F.3d 780, 788 (6th Cir. 2003), (citing Marshall v.

Lonberger, 459 U.S. 422, 434 (1983)).  "A reviewing court 'faced with a record of

historical facts that supports conflicting inferences must presume – even if it does not

affirmatively appear in the record – that the trier of fact resolved any such conflicts in

favor of the prosecution, and must defer to that resolution.'" McDaniel v. Brown, 558

U.S. 120, 133 (2010) (quoting Jackson, 443 U.S. at 326).  According the state court's

findings of fact a presumption of correctness, the Michigan Court of Appeals' decision

easily passes scrutiny under the deferential AEDPA standard.  The state court applied

the correct constitutional test, relied on facts amply supported in the record, and did not

unreasonably apply clearly established constitutional law.  Petitioner is not entitled to

habeas relief with respect to this claim.

### B. Admission of Hearsay Testimony

Petitioner's second habeas claim argues the admission of hearsay statements violated his due process rights and the Confrontation Clause. He challenges the testimony of Kimberly Bowe (T.M.'s mother) and Genevieve Douglas (a group home supervisor) recounting that, on August 18, 2007, T.M. told them that her father had raped her the day before during an unsupervised visit. Respondent argues that this claim is waived and procedurally defaulted.

As an initial matter, "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits," Hudson v. Jones, 351 F.3d 212, 215 (6th Cir. 2003) (citing Lambrix v. Singletary, 520 U.S. 518, 525 (1997)). Application of a procedural bar would not affect the outcome of this issue. Therefore, it is more efficient to proceed directly to the merits of Petitioner's claim. See Howard v. Bouchard, 405 F.3d 459, 476 (6th Cir. 2005) (procedural default is not a jurisdictional bar to review of the merits of an issue).

To the extent Petitioner argues that the state court incorrectly applied state rules of evidence, this claim is not one that may be reached on federal habeas review. Shoemaker v. Jones, — F. App'x —, 2015 WL 480233, *5 (6th Cir. Feb. 6, 2015). Petitioner's argument that admission of this testimony violates the Confrontation Clause does raise a claim cognizable on habeas review.

The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Confrontation Clause bars out-of-court

13

statements that are testimonial in nature unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. Crawford v. Washington, 541 U.S. 36, 68 (2004). "It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." *Davis v. Washington*, 547 U.S. 813, 821 (2006). The Confrontation Clause has no application to non-testimonial statements. Whorton v. Bockting, 549 U.S. 406, 420 (2007). To determine whether a statement is testimonial, a court asks "'whether the declarant intends to bear testimony against the accused. That intent, in turn, may be determined by querying whether a reasonable person in the declarant's position would anticipate [her] statement being used against the accused in investigating and prosecuting the crime.'" Berry v. Capello, 576 F. App'x 579, 585 (6th Cir. 2014) (quoting United States v. Cromer, 389 F.3d 662, 675 (6th Cir. 2004)).

T.M.'s statements to her mother and Genevieve Douglas were not made under circumstances where she would anticipate her statement would be used against her father in the investigation and prosecution of a crime. The record shows that T.M. turned to her mother the day after her unsupervised visit with her father on August 17, 2007, because she was distraught and uncertain about her future. T.M.'s mother testified that T.M. told her that her father had raped her and had oral sex with her, and that he threatened to kill her and her family if she told anyone. T.M. was conflicted because she did not want her father to abuse her again, yet she also wanted to maintain a relationship with him. Douglas testified that, the day after T.M.'s visit with her father, T.M. was upset and agitated and asked to speak to her mother. After T.M.

14

spoke to her mother, Douglas spoke with T.M.  Douglas testified that she had become

T.M.'s confidant during T.M.'s time at the group home.  T.M. told Douglas that her father

had forcibly had intercourse with her and then performed cunnilingus on her.

T.M.'s statements to her mother and Douglas were not "directed at establishing

the facts of a past crime, in order to identify (or provide evidence to convict) the

perpetrator."  Davis v. Washington, 547 U.S. 813, 826 (2006).  The primary purpose of

T.M.'s statements to her mother and Douglas were personal in nature; she apparently

sought counsel and comfort.  These are not the sorts of "judicial-process-created

evidence of which Crawford speaks."  United States v. Manfre, 368 F.3d 832, 838 n.1

(8th Cir. 2004).  See also, United States v. Franklin, 415 F.3d 537, 545 (6th Cir. 2005)

(concluding that statements were non-testimonial where witness "was privy to

[Declarant]'s statements only as his friend and confidant"); Horton v. Allen, 370 F.3d 75,

84 (1st Cir. 2004) (statements made in private conversation nontestimonial); cert.

denied, 543 U.S. 1093 (2005).  Thus, Crawford is inapplicable.

Moreover, even if T.M.'s statements to Bowe and Douglas could be considered

testimonial in nature, their admission did not violate the Confrontation Clause because

T.M. was available for cross-examination at the preliminary examination.  The Court of

Appeals for the Sixth Circuit has acknowledged "there is some question whether a

preliminary hearing necessarily offers an adequate prior opportunity for cross-

examination for Confrontation Clause purposes."  Al-Timimi v. Jackson, 379 F. App'x.

435, 437 (6th Cir. 2010) (citing Vasquez v. Jones, 496 F.3d 564, 577 (6th Cir. 2007))

(doubting whether "the opportunity to question a witness at a preliminary examination

hearing satisfies the pre-Crawford understanding of the Confrontation Clause's

15

guarantee of an opportunity for effective cross-examination") (internal quotation marks omitted).  But, in California v. Green, 399 U.S. 149 (1970), the Supreme Court found no Confrontation Clause violation where the trial court admitted a prior statement of a witness made at a preliminary hearing.  The Supreme Court found that the circumstances of the hearing closely approximated those of a typical trial, noting that the witness was under oath, the defendant was represented by counsel who had every opportunity to cross-examine the witness, and "the proceedings were conducted before a judicial tribunal equipped to provide a judicial record of the hearings."  Id. at 165.  The Supreme Court concluded "we do not find the instant preliminary hearing significantly different from an actual trial to warrant distinguishing the two cases for purposes of the Confrontation Clause."  Id.

Similarly, in this case, the preliminary examination closely approximated the circumstances of a trial.  T.M. testified under oath, the examination was presided over by a judicial tribunal and a record was created, and defense counsel was given adequate opportunity to cross-examine T.M.  Indeed, counsel was made aware of the grave turn T.M.'s health had taken at the outset of her preliminary examination testimony.  She testified that she had suffered seizures the previous week and doctors discovered her cancer had returned.  She was scheduled for surgery the day after the preliminary examination and another surgery a week later.  Defense counsel was clearly on notice about the importance of T.M.'s preliminary examination testimony.  The Court concludes T.M. thus was subject to meaningful cross-examination, and the trial court's decision to admit her hearsay statements was not contrary to or an unreasonable application of clearly established federal law.

16

Finally, even if admission of these hearsay statements violated the Confrontation Clause, the error was harmless.  A violation of the Confrontation Clause is subject to harmless error analysis.  See Lilly v. Virginia, 527 U.S. 116, 140 (1999); Coy v. Iowa, 487 U.S. 1012, 1021-22 (1988); Delaware v. Van Arsdall, 475 U.S. at 681-84 (1986). On habeas review, to determine whether an error is harmless a court must ask whether the error "had [a] substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).  "To determine the effect of the error under Brecht, [the court should] consider both the impact of the improperly admitted evidence and the overall weight of the evidence presented at trial." Peterson v. Warren, 311 Fed. App'x. 798, 805 (6th Cir. 2009) (citing Brecht, 507 U.S. at 639). Factors to be considered in determining whether a Confrontation clause error was harmless under Brecht include: "(1) 'the importance of the witness' testimony in the prosecution's case,' (2) 'whether the testimony was cumulative,' (3) 'the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points,' (4) 'the extent of cross-examination otherwise permitted,' and (5) 'the overall strength of the prosecution's case.'" Vasquez, 496 F.3d at 574 and 574 n. 8 (6th Cir. 2007) (quoting Delaware v. Van Arsdall, 475 U.S. at 684).

The Van Arsdall factors support a finding that the admission of these statements did not have a substantial impact on the verdict.  T.M.'s hearsay statements were merely cumulative when compared with the other evidence against Petitioner.  T.M. testified at the preliminary examination that Petitioner raped and performed cunnilingus on her on August 17, 2007, and Petitioner had an opportunity to cross-examine her on

17

this subject.  Petitioner admitted that he took T.M. back to his apartment, although the unsupervised visit was supposed to be in the community.  In addition, T.M.'s demeanor following her visit with her father evidenced a great deal of trauma.  Overall, T.M.'s testimony was so strong such that admission of the hearsay statements did not have a substantial and injurious effect on the verdict.  Petitioner is not entitled to habeas relief on this claim.

### C.  Right to Present a Defense

In his third claim, Petitioner argues that the trial court denied him his right to present a defense when it precluded defense counsel from questioning M.M. about her relationship with her foster parents and why she was removed from her mother's home and precluded defense counsel from asking whether she abused all of her children not just M.M. and T.M.  Petitioner claims that this limitation denied him his ability to question the credibility of both M.M. and Bowe.  Respondent argues this claim is procedurally defaulted.  As with Petitioner's hearsay claim discussed above, it is more  efficient to address the merits of this claim rather than to consider the question of procedural default.  Hudson, 351 F.3d at 215.

The right of a defendant to present a defense has long been recognized as "a fundamental element of due process of law."  Washington v. Texas, 388 U.S. 14, 19 (1967).  It is one of the "minimum essentials of a fair trial."  Chambers v. Mississippi, 410 U.S. 284, 294 (1973).  While the right to present a defense is a fundamental tenet of due process, "a defendant's right to present evidence is not unlimited, but rather is subject to reasonable restrictions."  United States v. Scheffer, 523 U.S. 303, 307 (1998). Indeed, "[a] defendant's interest in presenting . . . evidence may thus bow to

18

accommodate other legitimate interests in the criminal trial process." Id. (internal quotations omitted). However, the exclusion of evidence is unconstitutional where it "infringe[s] upon a weighty interest of the accused." Id. (citing Rock v. Arkansas, 483 U.S. 44, 58 (1987)).

The Michigan Court of Appeals held that the trial court's limitations on cross-examination were reasonable restrictions that did not limit Petitioner's ability to present a defense. Mead, 2009 WL 4981196 at *3-4. The state court reasoned that M.M.'s relationship with her foster parents, even if volatile, did not have "any tendency to make any fact of consequence more probable in this case. . . . [I]t did not make the defense of fabrication more likely, contrary to defendant's arguments." Id. at *4. With respect to questions regarding why M.M. was removed from her mother's residence, the Michigan Court of Appeals held this testimony was properly excluded because there was no evidence that M.M. had personal knowledge why she was removed. Id. In addition, defense counsel was permitted to question Bowe and the foster care worker regarding the girls' removal from Bowe's home. Id. Finally, defense counsel questioned the foster care worker regarding Bowe's treatment of her other children and evidence was adduced regarding Bowe's physical abuse of her children, including three instances involving her other children. Id.

The limitation imposed was narrow and reasonably drawn to maintain the focus on the conduct and charges at issue in this case. It did not substantially impair Petitioner's ability to challenge M.M.'s or Bowe's credibility or expose their motives for testifying and inconsistent testimony. See Stewart v. Wolfenbarger, 468 F.3d 338, 347 (6th Cir. 2006) ( "Where the trial court limits the extent of cross-examination, the inquiry

19

for the reviewing court is whether the jury had enough information, despite the limits placed on otherwise permitted cross-examination, to assess the defense theory." (quotation omitted)).  The Michigan Court of Appeals' holding that Petitioner's constitutional rights were not violated was reasonable in its application of and consistent with federal law.  Accordingly, Petitioner is not entitled to relief on this ground.

### D.  Availability of Assistive Devices

In his sixth claim for habeas corpus relief, Petitioner argues that the trial court erred in failing to provided him with assistive devices to enable him to assist in his own defense.  Respondent argues that his claim is procedurally defaulted.

Federal habeas relief is precluded on claims that were not presented to the state courts in accordance with the state's procedural rules.  See Wainwright v. Sykes, 433 U.S. 72, 85-87 (1977).  The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "independent of the federal question and adequate to support the judgment."  Walker v. Martin, 562 U.S. 307, —, 131 S. Ct. 1120, 1127 (2011) (internal quotations omitted).  Petitioner raised this claim for the first time on collateral review in state court.  The Michigan Supreme Court denied relief pursuant to Michigan Court Rule 6.508(D), which provides, in part, that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom.  *See* Mich. Ct. R. 6.508(D)(3).  This form order used by the Michigan Supreme Court to deny leave to appeal in this case is unexplained because its citation to Michigan Court Rule

6.508(D) is ambiguous as to whether it refers to a procedural default or a rejection on the merits.  See Guilmette v. Howes, 624 F.3d 286, 291-92 (6th Cir. 2010) (en banc). Consequently, under Guilmette, the Court must "look through" the unexplained order of the Michigan Supreme Court to the state trial court's decision to determine the basis for the denial of state post-conviction relief.

The state trial court clearly denied relief on procedural grounds.  The trial court cited Michigan Court Rule 6.508(D)(3) and concluded that Petitioner could not establish cause and prejudice because his underlying claim lacked merit and that he had not shown that a miscarriage of justice had occurred.  3/16/11 Opinion & Order at 3. Accordingly, this claim is procedurally defaulted, unless Petitioner can satisfy the cause and prejudice standard or the miscarriage of justice exception.

"The 'cause' standard in procedural-default cases requires the petitioner to show that 'some objective factor external to the defense impeded counsel's efforts' to raise a claim in the state courts."  Wogenstahl v. Mitchell, 668 F.3d 307, 321 (6th Cir. 2012) (quoting McCleskey v. Zant, 499 U.S. 467, 493 (1991)).  "Such factors may include interference by officials, an attorney error rising to the level of ineffective assistance of counsel, or a showing of a factual or legal basis for a claim that was not reasonably available."  Id.  Petitioner alleges his appellate attorney's ineffectiveness as cause to excuse his default in failing to raise this claim on direct appeal of his convictions.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court established a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel.  First, a petitioner must prove that counsel's performance was deficient.  This "requires a showing that counsel made errors so

21

serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. at 687.  Second, a petitioner must show that counsel's deficient performance prejudiced petitioner.  Id.

A habeas petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal.  Jones v. Barnes, 463 U.S. 745, 754 (1983). "[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal."  Smith v. Robbins, 528 U.S. 259, 288 (2000). Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel."  United States v. Perry, 908 F.2d 56, 59 (6th Cir. 1990).  The prejudice standard in the context of a claimed failure to raise issues on appeal requires a showing that there is "a reasonable probability, but for counsel's unreasonable failure . . . he would have prevailed on his appeal."  Smith, 528 U.S. at 285.  The process of "'winnowing out weaker arguments on appeal' " is "the hallmark of effective appellate advocacy."  Smith v. Murray, 477 U.S. 527, 536 (1986) (quoting Barnes, 463 U.S. at 751-52).  "'[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome.'" Monzo v. Edwards, 281 F.3d 568, 579 (6th Cir. 2002) (quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986)).  To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions."  Strickland, 466 U.S. at 688.

Petitioner has not shown that the assistive-devices-related claim was stronger

than those raised on appeal.  The trial court, although finding this claim procedurally

barred, nevertheless addressed the merits of the claim.  In a carefully reasoned,

thorough decision, the trial court held as follows:

> Defendant's first substantive argument is that the court violated his due
> process and constitutional rights by failing to provide assistive devices
> pursuant to Americans with Disabilities Act of 1990[] (ADA), thus
> preventing him from aiding in his own defense.  Defendant asserts that he
> has the medical condition of retinoblastoma rendering him blind, and that
> without the aid of a brail [sic] machine, an automated reading device, or a
> court appointed visual impairment specialist, he was unable to view
> exhibits, read discovery materials, access the jail law library materials, or
> effectively communicate with counsel in written format while incarcerated
> and that consequently, the jail staff would have read the confidential
> communications between himself and counsel.
>
> To begin with the ADA was enacted to protect people with disabilities from
> employment discrimination and to ensure reasonably unfettered access to
> services and facilities open to the public.  Defendant's reliance on the ADA
> to support a violation of due process claim in a criminal matter is novel
> and as applied in the instant matter, appears to be a case of first
> impression; the court nevertheless finds Defendant's argument
> unpersuasive.
>
> In order to ensure that indigent, disabled, criminal defendants are afforded
> due process and access to the court, the court is required to comply with
> the provisions of the ADA and specifically, make reasonable
> accommodations for such defendants.  Tennessee v. Lane, 541 U.S. 509,
> 532, 124 S. Ct. 1978, 158 L.Ed. 2d 820 (2004).  Unpreserved errors are
> reviewed for plain error and may not be considered on appeal unless the
> error could have been decisive of the outcome, worked a miscarriage of
> justice, or falls under a category of cases in which prejudice is presumed
> or reversal is automatic.  U.S. v. Olano, 507 U.S. 725; 113 S. Ct. 1770
> (1993).  See also People v. Carines, 460 Mich. 750; 597 N.W.2d 130
> (1999).
>
> To support his claim, defendant cites Memmer v. Marin County Courts,
> 169 F.3d 630 (1999), in which an indigent blind defendant in a civil eviction
> action was afforded but rejected a court appointed Spanish language
> interpreter (rather than a visual impairment specialist) to assist her during
> the proceedings.  Appellant requested and was granted with some
> restrictions the assistance of a different individual (who did not have any
> special credentials or training).  It is ruling the U.S. Court of Appeals for

23

the Ninth Circuit found that although courts are subject to the provisions of the ADA, the appellant litigant did not demonstrate that the accommodations offered by the appellee court were unreasonable. The Ninth Circuit reasoned that no special skill was required to assist a blind litigant other than the general ability to read and verbally communicate. Further, the court held that in order to prevail (and recover monetary damages) on a civil ADA claim, the appellant must produce evidence of discriminatory intent on the part of appellee.

In the present case, the court is not convinced by defendant's argument and [finds] that, under the circumstances its appointment of counsel was a reasonable accommodation in compliance with the ADA. First, Defendant has failed to demonstrate a discriminatory intent on the part of the court. There has been no evidence presented to indicate that the court willfully or affirmatively committed any act or omission that would have worked against Defendant's interests or denied him a fair trial, nor specifically has defendant demonstrated any discriminatory behavior on the part of the court based on his disability. To the contrary, and despite defendant's allegations of ineffectiveness of counsel, defendant was provided with court appointed counsel, who although [he] may not be a qualified specialist for the visually impaired, was clearly in a position to apprise defendant of any pertinent documents in the discovery or exhibits presented at trial.

Second, under 28 C.F.R. §§ 35.135, the personal services and devices provision of the ADA "does not require a public entity to provide to individuals with disabilities personal services, such as wheelchairs; individually prescribed devices, such as prescription eyeglasses or hearing aids; readers for personal use or study; or services of a personal nature including assistance in eating, toileting, or dressing." All that is required under the ADA is that a disabled person is not discriminated [against] on the basis of that disability. Despite defendant's claim that he was not afforded an ability to confidentially communicate in written format with defense counsel, there has been no showing of what confidential or privileged communications, if any, were compromised, or that defendant was prejudiced as a result. Although not an ideal situation defendant indicates that he was informed about the contents of written correspondence with the aid of jail personnel. Furthermore, access to the jail law library is governed by jail police and is not a constitutional right. Finally, and most important to the question of any impediment to defendant's right to due process, is that defendant had access to counsel, who was in a position to communicate verbally with defendant and seek defendant's input regarding the evidence and the case.

Third, defendant has not demonstrated that a request for assistive devices

24

was ever made during the course of the proceedings or during the trial. The court is not clairvoyant and is not required to sua sponte offer special accommodations in the absence of a request from a party. Additionally, there is nothing in the record to indicate that defendant himself ever requested or relayed to counsel a demand for assistive aids. Furthermore, defendant fails to adequately support this claim with relevant and applicable case law. Mitcham v Detroit, 355 Mich 185, 203; 94 NW2d 388 (1959). In the complete absence of a specific request, to anticipate the needs of a litigant would be an onerous task for the court to engage in beyond its mandate to adjudicate legal matters. It would be ludicrous to assign error to a supposed court decision, when the court was never asked to make a decision. Defendant was not denied access to the court, was not denied access to legal counsel, was not denied a fair trial, and was not denied due process of law. Consequently, the court finds defendant's denial of due process claim based on an ADA violation to be meritless.

3/16/11 Opinion & Order at 3-6.

Petitioner has failed to rebut with "clear and convincing evidence" (indeed, with *any* evidence) the state court's factual finding that neither he nor his attorney requested assistive devices from the trial court during the pendency of the proceedings. 28 U.S.C. § 2254(e)(1); Rice v. Collins, 546 U.S. 333, 338-89 (2006) ("State-court factual findings . . . are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'"). Petitioner has pointed to no clearly established Supreme Court precedent requiring assistive devices in this context. Therefore, he cannot establish that the state court's ruling was contrary to or an unreasonable application of clearly established Supreme Court precedent. Moreover, Petitioner's own cogent and voluminous filings in this court and in state court demonstrate his ability to independently pursue his claims with the state court and this court with the resources available to him. The record shows that Petitioner possessed a functional understanding of the proceedings against him and an ability to consult with his lawyer

25

with a reasonable degree of understanding.

Petitioner fails to show that his claim that the trial court erred in failing to accommodate his disability was meritorious. Therefore, appellate counsel cannot be said to have been ineffective in failing to raise this issue on direct appeal. Thus, this claim is procedurally defaulted and barred from review unless Petitioner can establish that a constitutional error resulted in a fundamental miscarriage of justice. See Schlup v. Delo, 513 U.S. 298, 321 (1995). The Supreme Court has tied the miscarriage of justice exception to procedural default to a petitioner's innocence. Id. To make a showing of actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt." Id. at 327. Petitioner fails to present new, reliable evidence in light of which no reasonable juror would have found him guilty. Therefore, this claim is procedurally defaulted.

### D. Ineffective Assistance of Counsel Claims

In his fourth and seventh habeas claims, Petitioner raises several ineffective assistance of counsel claims. Specifically, he alleges trial counsel was ineffective in failing to: (i) investigate and present exculpatory witnesses; (ii) object to hearsay testimony from Katina Jones and Kimberly Bowe; (iii) properly confront witnesses; (iv) properly cross-examine witnesses; (v) communicate with Petitioner or provide assistive devices; (vi) properly investigate; and (vii) preserve issues for appeal.

As discussed above, to establish that he received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the petitioner. Strickland, 466

26

U.S. at 687.

First, Petitioner argues that counsel was ineffective in failing to call two witnesses, Deborah Golden and Carwell Williams.  He claims he provided counsel with their names, but counsel never contacted them.  Petitioner has submitted an affidavit from Deborah Golden in which she claims to have spoken to T.M. by telephone on August 17, 2007, while T.M. was visiting her father.  She claims T.M. was nearing the end of her visit when they spoke and that T.M. seemed happy and content.  In addition, she states that she heard several phone calls from T.M. to her father during which T.M. complained about her living conditions at various foster homes.  She also states that she has a recording of M.M. apologizing for making false accusations.

Petitioner has also submitted an affidavit from Carwell Williams, a retired Detroit police officer.  Williams states that he was acquainted with Petitioner and his daughters and provided them transportation on various occasions.  Neither girl ever told him that their father assaulted them.  He stated that, in particular, in the summer of 2007, he provided Petitioner and T.M. with a ride, and that T.M. did not indicate that anything improper happened at her father's apartment.

The Michigan Court of Appeals held that counsel's failure to call these witnesses was not ineffective.  The court of appeals reasoned that Golden's testimony would have been generally inadmissible as hearsay and Williams' "vague testimony would have added nothing to the defense."  Mead, 2009 WL 4981196 at *4.  The Court finds the state court's conclusion reasonable.  Even assuming neither Golden or Williams was told of or aware of the abuse, that does not tend to show the abuse did not occur.  Neither affidavit shows that Golden or Williams had a special relationship with T.M. or

27

M.M. such that either girl would have confided in them.  Indeed, Golden references her decades-long close friendship with Petitioner, making it unlikely she would be chosen as a confidant.  Finally, even to the extent that the purported recording of M.M. apologizing for making false accusations existed and was admissible, such a recording would have had negligible value as M.M. admitted that she previously recanted her allegations against Petitioner because she felt threatened by him.  Habeas relief is therefore not warranted on this allegation of ineffective assistance of counsel.

Next, Petitioner argues that counsel was ineffective in failing to object to Katina Jones' and Kimberly Bowe's testimony on hearsay grounds.  First, he argues that counsel should have objected to Jones' testimony that T.M.'s foster parent told Jones that she believed T.M. was on the phone with Petitioner when she was caught masturbating.  The Michigan Court of Appeals held that defense counsel could have raised a meritorious objection to this testimony, but that the error did not prejudice Petitioner.  Mead, 2009 WL 4981196 at * 5.  The Court agrees.  There is no indication that the trial court's verdict was influenced by this testimony, nor did it tend to establish an element of the crime.  The state court's decision that Petitioner was not prejudiced by counsel's failure to object was a reasonable application of Strickland.  Second, Petitioner argues that counsel should have objected to Bowe's testimony that T.M. told her that she heard inappropriate noises coming from a room where Petitioner and M.M. were.  The Michigan Court of Appeals held that this testimony was properly admitted because it was not offered to prove the truth of the matter asserted.  Mead, 2009 WL 4981196 at *5.  The testimony was offered to explain why Bowe decided to contact authorities.  Counsel cannot be judged ineffective for failing to raise a meritless

28

objection.  Habeas relief is denied on this claim.

Respondent argues that Petitioner's remaining ineffective assistance of counsel claims are procedurally defaulted.  Again, it is most efficient to address the merits of these claims.  Petitioner claims counsel was ineffective in failing to review police reports, child protective services reports, medical reports and other demonstrative evidence with Petitioner, and, relatedly, in failing to procure reasonable accommodations for Petitioner to review these items.  The trial court denied this claim, stating, in relevant part:

> The ADA does not extend any special rights to a disabled criminal beyond those which are afforded under the Constitution to any criminal defendant. The court likens the instant matter to one in which a defendant is illiterate. Counsel is simply not required to read a defendant every single page contained in a discovery package.  No measure of reasonableness would require such a herculean task in a complex felony case.  Beyond the allegations, there has been no showing that defendant was denied access to the court, access to his attorney, or was not afforded a fair, equitable, and just trial.  Consequently, the court finds that defense counsel's performance did not fall below the reasonableness standard established under Strickland, or that defendant was prejudiced by counsel's performance.

3/16/11 Opinion & Order at 8-9.

This well-reasoned opinion is not contrary to or an unreasonable application of Supreme Court precedent.  As discussed above, Petitioner fails to establish any accommodations were necessary to assist him in his defense.  He does not show that counsel was unable to discuss with him relevant evidence, documents, or Petitioner's defense.  Other than conclusory allegations, Petitioner fails to offer any concrete examples of defenses that were unavailable to him based upon his attorney's alleged failure to procure reasonable accommodations and the Court finds none in the record.

29

Petitioner's remaining ineffective assistance of counsel claims are, as the trial court aptly described them, a "laundry list of allegations."  3/16/11 Order at 8.  The trial court concluded that these allegations failed to establish ineffective assistance of counsel under <u>Strickland</u>.  Petitioner's habeas petition also asserts these remaining ineffective assistance of counsel claims in conclusory fashion.  These allegations, lacking any evidentiary support, are insufficient to establish that the state court unreasonably applied <u>Strickland.</u>

### E.  Ineffective Assistance of Appellate Counsel Claim

Finally, Petitioner raises an ineffective assistance of counsel claim as cause to excuse his many procedurally defaulted claims.  The Court addressed the ineffective assistance of appellate counsel raised as cause to excuse the default of Petitioner's assistive-devices related claim above.  With respect to the remaining procedurally defaulted claims, the Court determined that the interests of judicial economy were best served by addressing the merits of the defaulted claims.  Nevertheless, the Court will briefly address the ineffective assistance of appellate counsel claim.

Petitioner claims that appellate counsel was ineffective in failing to raise on direct review the claims raised in this petition but not raised on direct review.  Petitioner has failed to show that these claims were potentially meritorious.  Therefore, he cannot show that his appellate attorney was ineffective for failing to raise the claims on direct appeal.

### V.  Petitioner's Motions

As noted above, Petitioner filed multiple motions related to his petition.  They are addressed in turn below.

## A.  Motion to Appoint Counsel

Petitioner has filed a motion seeking the appointment of counsel.  There exists no constitutional right to the appointment of counsel in civil cases, and the court has broad discretion in determining whether counsel should be appointed.  Childs v. Pellegrin, 822 F.2d 1382, 1384 (6th Cir. 1987) ("[A]ppointment of counsel in a civil case is . . . a matter within the discretion of the court.  It is a privilege and not a right.") (internal quotation omitted).  A habeas petitioner may obtain representation at any stage of the case "[w]henever the United States magistrate or the court determines that the interests of justice so require."  18 U.S.C. § 3006A(a)(2)(B).  The interests of justice do not require appointment of counsel.  Rather, Petitioner has been able to fully articulate his claims for relief in his filings absent counsel.

## B.  Motion for Order Directing Respondent to Expand Its Filing of Rule 5 Materials

Petitioner asks the Court to direct Respondent to file additional Rule 5 Materials. Rules 5(c) and (d), Rules Governing Section 2254 Cases, requires the respondent to file a copy of any prior decisions, pleadings, briefs, and transcripts relevant to the issues presented in a habeas petition.  Petitioner claims that Respondent failed to file two pre-trial motions filed by Petitioner in the trial court.  In ruling on the merits of the issues raised in this petition, the Court has reviewed the state court record filed by Respondent.  The Court required no additional portions of the state court record to allow for a fair adjudication of Petitioner's claims.  The motion must therefore be denied.

## C.  Motion for Evidentiary Hearing

Petitioner seeks an evidentiary hearing to develop evidence related to his claims

that appellate counsel was ineffective for failing to raise the denial of access to the court claim on direct appeal, that trial counsel was ineffective in failing to call Deborah Golden as a witness, and the evidence was insufficient to sustain his convictions.

Federal habeas review under 28 U.S.C. §2254(d) is "limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, — U.S. —, 131 S. Ct. 1388, 1398 (2011). "[R]eview under § 2254(d)(1) focuses on what a state court knew and did." Id. at 1399. The Court reasoned that "[i]t would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court." Pinholster, 131 S.Ct. at 1399. "[D]istrict courts are precluded from conducting evidentiary hearings to supplement existing state court records when a state court has issued a decision on the merits with respect to the claim at issue." Ballinger v. Prelesnik, 709 F.3d 558, 561 (6th Cir. 2013). The claims on which Petitioner seeks an evidentiary hearing were decided on the merits by the state court. Therefore, the Court must decide these claims based upon the existing record. The motion must be denied.

### D. Motion Requesting All Orders and Opinions and All Pleadings Be Issued in Braille or Audio Format

Finally, Petitioner requests that all orders, opinions, and pleadings be issued in Braille or audio format to accommodate his disability. Petitioner's many pleadings filed in this case, not the least of which is his 34-page reply to Respondent's answer, show that such an accommodation is unnecessary for Petitioner to adequately pursue his claims in this Court. The motion must be denied.

### VI. Certificate of Appealability

32

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. §2253.  Rule 11 of the Rules Governing Section 2254 Proceedings requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the application."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. §2253(c)(2).  A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  Slack v. McDaniel, 529 U.S. 473, 484 (2000) (citation omitted).

The Court concludes that reasonable jurists would not debate the resolution of any of Petitioner's claims or find that they should proceed further.  Thus, a COA will be denied.

## VII.  Conclusion

For the reasons stated above, the petition for a writ of habeas corpus is DENIED.  A COA is DENIED.

Petitioner's pending motions (1) for the appointment of counsel, (2) to expand the Rule 5 materials, (3) for an evidentiary hearing, and (4) for accommodations in court filings are DENIED.

This case is DISMISSED.

SO ORDERED.

S/Avern Cohn
UNITED STATES DISTRICT JUDGE

Dated:  March 31, 2015

33

13-13903 Meade v. Willie Smith

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, March 31, 2015, by electronic and/or ordinary mail.

S/Sakne Chami                    
Case Manager, (313) 234-5160

34